USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 8/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
YACOUBA TRAORE,

                 Petitioner,

    -against-

THOMAS DECKER, *New York Field Office Director for U.S. Immigration and Custom Enforcement,*
KEVIN MCALEENAN, *Acting Secretary of the U.S. Department of Homeland Security,* and WILLIAM BARR, *Attorney General of the United States,*

                 Respondents.
---------------------------------------------------------------- x

19-cv-4612 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

    Yacouba Traore (hereinafter, "Petitioner" or "Mr. Traore"), an arriving immigrant in the midst of removal proceedings, petitions this Court for a Writ of Habeas Corpus to release him from custody or, in the alternative, order a bond hearing before a neutral arbiter. Mr. Traore asserts that the indefinite nature of his detention, which began on December 5, 2017, is unconstitutional. Respondents assert that Mr. Traore's detention is governed by 8 U.S.C. § 1225(b)(2)(A), and that his status as an "arriving alien" renders his detention constitutional pending a removal decision. Upon review, this Court concludes that, pursuant to 8 U.S.C. § 1225(b)(2)(A), Mr. Traore's detention is constitutional, and he is not entitled to a bond hearing at this time.

## PROCEDURAL HISTORY

    Mr. Traore filed the instant Petition on May 20, 2019. ECF No. 1 ("Pet."). On June 4, 2019, after receiving an extension from the Court, Respondents filed their Response to the Petition. ECF Nos. 5-8. Petitioner replied to the Response on June 7, 2019. ECF No. 9. The Court held a Conference on June 18, 2019. ECF No. 10. Following the Conference, the Court

ordered the Parties to submit a Joint Status Report, which they filed on July 10, 2019. ECF No. 11.

The instant Petition has been fully briefed, and the Parties have been heard on the issues at hand. After careful consideration, Mr. Traore's Petition for a Writ of Habeas Corpus is hereby **DENIED**.

## BACKGROUND[1]

### I. Immigration Proceedings

Mr. Traore is a native and citizen of Mali. Pet. ¶ 18. Mr. Traore entered the United States without inspection or admission at an unknown date and location. Resp. Pet. p. 6, ECF No. 8 ("Resp."). In July of 2005, United States Citizenship and Immigration Services ("USCIS") granted Mr. Traore advance parole, which allowed him to travel outside the country, while his application for relief was pending. *Id*. On February 3, 2006, Mr. Traore returned to the United States and sought re-entry. Pet. ¶ 19; Resp. p. 6. Pursuant to his grant of advance parole, Mr. Traore was paroled into the United States so that he could pursue his previously filed relief application. *Id*. Mr. Traore was not admitted, and on May 14, 2007, USCIS denied his application for relief. Resp. p. 6. Despite the denial of his application, Mr. Traore remained in the United States without status. *Id*.

On December 4, 2017, pursuant to the Immigration and Nationality Act ("INA") section 212(a)(7)(A)(i)(I), the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") and initiated removal proceedings against Mr. Traore. Pet. ¶ 20. The NTA labeled Mr. Traore an "arriving alien" – an alien seeking admission without valid entry documentation – and charged him as inadmissible under INA section 212(a)(7)(A)(i)(I), 8 U.S.C. §

---

[1] The facts relevant to the disposition of this Petition are largely undisputed and drawn from the Petition and the Response. ECF Nos. 1, 6-8.

2

1182(a)(7)(A)(i)(I). Resp. p. 6; Pet. ¶ 20. Mr. Traore was detained on December 5, 2017. Pet. ¶ 21.

On December 11, 2017, Immigration Customs Enforcement ("ICE") filed the NTA with the Varick Street Immigration Court ("Varick Street"), and Mr. Traore appeared with counsel for an initial master calendar hearing before an immigration judge. Resp. p. 7; Pet. ¶ 22. The immigration judge denied Mr. Traore bond and scheduled a second master calendar hearing for February 23, 2018. *Id.* On February 23, 2018, Mr. Traore submitted an application for relief from the charge of removability and the immigration judge scheduled a merits hearing for April 12, 2018. Resp. p. 7.

Following his second master calendar hearing, Mr. Traore married his fiancé, a United States citizen. Pet. ¶ 24; Resp. p. 7. In March of 2018, Mr. Traore filed an I-130 Petition for Alien Relative with USCIS. *Id.* While Mr. Traore's application was under consideration, Mr. Traore appeared for the previously scheduled merits hearing. *Id.* On May 29, 2018, USCIS denied Mr. Traore's I-130 Petition. Resp. p. 8.

In late June of 2018, the immigration judge granted Mr. Traore's application for withholding of removal to Mali pursuant to section 241(b) of the INA. Pet. ¶ 26; Resp. p. 8. ICE appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). Resp. p. 8. On December 7, 2018, the BIA issued a decision remanding the matter back to the immigration judge for further adjudication and the entry of a new decision. *Id.* ¶ 30; Resp. p. 8. Pursuant to the BIA's decision, the immigration judge issued a subsequent decision once again granting Mr. Traore's application for withholding of removal to Mali on January 29, 2019. Pet. ¶ 31; Resp. p. 8.

On February 22, 2019, ICE discovered that the immigration judge's January 29, 2019 decision did not expressly order Mr. Traore removed from the United States. Resp. p. 9. The legal deficiency rendered the order withholding Mr. Traore's removal without force, and ICE filed a brief requesting amendment of the immigration judge's order on those grounds. *Id.*; Pet. ¶ 33. On March 5, 2019 Mr. Traore requested a conference to discuss the pending amendment, and the immigration judge granted Petitioner's request. Resp. p. 9. A week later, Mr. Traore appeared before an immigration judge, who issued an amended written decision thus clarifying the record and expressly ordering Mr. Traore's removal from the United States while withholding his removal to Mali. Resp. p. 8. At some point during this period, the U.S. Attorney's Office indicated that they identified an alternative location for Mr. Traore's removal – France. Pet. ¶ 32.

Following the order of removal, Mr. Traore filed a motion to reopen his removal proceedings on April 16, 2019, alleging changed circumstances – namely DHS's desire to remove Mr. Traore to France. Pet. ¶ 35; Resp. p. 9. Mr. Traore's motion was granted, despite ICE's opposition, on April 24, 2019. Pet. ¶ 36; Resp. p. 9. Mr. Traore appeared before an immigration judge for an additional master calendar hearing on May 20, 2019. Pet. ¶ 20; Resp. p. 10.

On July 5, 2019, three days prior to a previously scheduled July 8, 2019 hearing on the merits of Mr. Traore's claim for relief from removal to France, Mr. Traore filed a motion to terminate the immigration proceedings, thus precluding his removal to France. Pet. ¶ 20; Resp. p. 10; ECF No. 11. The immigration judge set a briefing schedule and scheduled a hearing on August 19, 2019 to rule on the motion to terminate. ECF No. 11. The initial July 8, 2019 merits hearing has yet to be rescheduled. *Id.*

## II. Habeas Petitions

While Mr. Traore was engaged in the removal proceedings outlined above, he also filed multiple Petitions for Writs of Habeas Corpus. Mr. Traore first sought a Writ of Habeas Corpus in this district on January 29, 2018, alleging that his detention of fifty-five (55) days without a bond hearing violated due process. Pet ¶ 23; Resp. p. 10; *see Traore v. Ahrendt*, 2018 WL 2041710 (S.D.N.Y. April 30, 2018). That Petition was denied on April 30, 2018. Pet. ¶ 25. Mr. Traore filed a second Petition on August 29, 2018. Pet. ¶ 27; Resp. p. 10. On September 13, 2018, his second Petition was transferred to the District of New Jersey where it was ultimately denied on April 10, 2019. Pet. ¶ 34; Resp. p. 10.

As stated, Mr. Traore filed the instant Petition for a Writ of Habeas Corpus, his third, on May 20, 2019. *See* Pet. Mr. Traore claims that his extended detention without a bond hearing violates his due process rights under the Fifth Amendment. Pet. ¶ 38. Mr. Traore has been detained since December 5, 2017. *Id.* ¶ 21.

## DISCUSSION

### I. 8 U.S.C. § 1225(b) Governs Petitioner's Detention

While immigration laws in the United States seem to be in constant flux, it has long been established that "the constitutional sufficiency of procedures provided in any situation ... varies with the circumstances." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Courts continue to uphold as rational the "distinction between aliens who have entered the United States and those who have not, and the granting of greater procedural and substantive rights to the former." *Tsimmer v. Ganter*, 550 F.Supp.2d 438, 443 (S.D.N.Y. 2008).

The detention of "arriving aliens," or individuals seeking initial entry, is governed by 8 U.S.C. § 1225(b)(2)(A) (the "Statute"). *Kouadio v. Decker*, 352 F.Supp.3d 235, 237 (S.D.N.Y.

5

2018); *see Charles v. Decker*, 2017 WL 6387795, at *4 (S.D.N.Y. Aug. 21, 2017). "[A]rriving aliens seeking asylum are subject to mandatory detention during the pendency of their applications for asylum." *Id.* (citing 8 U.S.C. § 1225(b)(1)(B)(2)). An arriving alien, or an immigrant seeking admission, includes one who is present in the United States but has not been admitted. *See* 8 U.S.C. § 1225(a)(1). Under the Statute, the only mechanism for release provided to "arriving aliens" is conditional parole, decisions on which are made with unreviewable discretion. *See Alexandre v. Decker*, 2019 WL 1407353, at *3 (S.D.N.Y. March 28, 2019). This is the procedure authorized by Congress, and it is considered "due process as far as an alien denied entry is concerned." *Poonjani v. Shanahan*, 319 F.Supp.3d 644, 649 (S.D.N.Y. 2018).

Here, it is undisputed that Mr. Traore has never been admitted into the United States. Despite the fact that he has remained in the United States, since 2007, without status, his initial application for relief was denied. Pet. ¶ 19; Resp. p. 6. It is also undisputed that, in 2017, the DHS issued an NTA and labeled Mr. Traore an "arriving alien." Pet ¶ 20; Resp. p. 6. Thus, Mr. Traore, an arriving alien seeking initial entry, fits squarely within the confines of 8 U.S.C. § 1225(b)(2)(A).

## II. At this Stage, Mr. Traore is Not Entitled to a Bond Hearing Under 8 U.S.C. § 1225(b)

### a. Arriving Aliens are Afforded a Base Level of Due Process Rights

Petitioner alleges that, even under the Statute, a prolonged detention without a bond hearing violates due process and the Constitutional liberty interests afforded to arriving aliens during the pendency of their proceedings. Pet. ¶¶ 40, 46. Petitioner also asserts that a release on bond is distinct from admission, and that the discretionary parole scheme outlined in the Statute is not a substitute for an individualized bond hearing. *Id.* ¶¶ 50, 55.

As outlined above, the Statute dictates the breadth of due process afforded to arriving aliens. *See Poonjani*, 319 F.Supp.3d at 648. Many courts have looked to the Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) ("*Mezei*") when analyzing cases under the Statue, and Respondents implore this Court do to the same. Resp. p. 8. In *Mezei*, the Supreme Court held that the extent of due process rights afforded to arriving aliens is limited to "whatever procedure has been authorized by Congress." *Poonjani*, 319 F.Supp.3d at 648 (quoting *Mezei*, 345 U.S. at 212); *see also Bermudez Paiz v. Decker*, 2018 WL 6928794, at *12 (S.D.N.Y. Dec 27, 2018). Taking it one step further, because the Statute does not expressly allow for a bond hearing, *Mezei* "dictates that due process does not require one" for arriving aliens. *Poonjani*, 319 F.Supp.3d at 649. However, decisions interpreting *Mezei* continue to narrow its interpretation with increasing frequency. *See Zadvydas v. Davis*, 533 U.S. 678 (2001); *Alexandre*, 2019 WL 1407353, at *4 (S.D.N.Y. March 28, 2019) ("[E]ven an "arriving alien" is entitled to a base level of procedural due process through which his or her detention must be evaluated."); *Bermudez Paiz*, 2018 WL 6928794, at *12 ("*Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."). This Court agrees – *Mezei* does not dictate the upper limits of due process owed to arriving aliens and completely eliminate the possibility of a bond hearing. Rather, "[t]here comes a time when the government can no longer rely on the mandatory language of § 1225(b) to keep an arriving alien behind bars without an individualized showing that he or she presents a flight risk or a danger to the public." *Bermudez Paiz*, 2018 WL 6928794, at *12. In this case, however, that time has yet to come.

7

### b. Mr. Traore's Dentition is Not in Violation of Due Process

Although Mr. Traore, as an arriving alien, is afforded some due process, a question remains as to the extent of due process required.

Based on the facts giving rise to the instant Petition, this Court finds that Mr. Traore has been afforded adequate due process in his immigration proceedings thus far. The Court reaches this conclusion for two primary reasons. First, Mr. Traore has yet to exhaust his administrative remedies. Second, even if Mr. Traore had exhausted the remedies available to him, his continued detention has not been unreasonable.

#### i. Mr. Traore did not Exhaust his Administrative Remedies Prior to the Filing of his Habeas Petition

For a party to seek federal review of an administrative determination, they must have first "sought all possible relief within the agency itself." *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995); *see also Xiu Ming Wang v. Gonzales*, 156 Fed.Appx. 395, 397 (2d Cir. 2005) (stating that a party must "pursue all possible relief within the deciding agency before seeking federal judicial review of an unfavorable administrative decision.") (internal citations omitted). Administrative exhaustion can be imposed either statutorily, rendering it mandatory and jurisdictional, or judicially, in which "sound judicial discretion governs." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003); *see Xiu Ming Wang*, 156 Fed.Appx. at 397. In this case, the Court finds judicial administrative exhaustion both appropriate and within its discretion.

As stated, during an arriving alien's constitutional detention, the Statue provides for one mechanism by which arriving aliens may obtain release into the United States during the pendency of their immigration proceedings – conditional parole. *See* 8 U.S.C. § 1182(d)(5)(A); *Alexandre*, 2019 WL 1407353, at *3; *Bermudez Paiz*, 2018 WL 6928794, at *16. While Mr. Traore discusses conditional or discretionary parole in his moving papers, at no point throughout

the history of these immigration proceedings has Mr. Traore sought the precise relief provided by the Statute. *See* Pet. ¶¶ 55-57. Unlike *Alexandre*, where the Court determined that the petitioner had not exhausted his available remedies by failing to "re-submit" his once denied parole application, here, there has been no ruling on parole despite Petitioner having "all the information and instructions needed to obtain parole." *See Alexandre*, 2019 WL 1407353, at *5. Thus, by failing to file an application for or even request parole, Petitioner has failed to exhaust his administrative remedies. *See id.*

### ii. Mr. Traore's Continued Detention is Not Unconstitutional

Even if Petitioner exhausted his administrative remedies, or, in the alternative, if the discretionary parole scheme provides insufficient due process protections[2], the facts of the instant case do not indicate an unconstitutional detention.

"Whether an individual alien's mandatory detention has become prolonged is a fact-dependent inquiry requiring an assessment of all the circumstances of any given case." *Bermudez Paiz*, 2018 WL 6928794, at *13 (quoting *Perez v. Decker*, 2018 WL 3991497, at *4 (S.D.N.Y. March 28, 2019)) (internal quotations omitted). The analysis employed by courts throughout this district is whether the length and nature of a detention has become unreasonable. *Id.* at 12 (collecting cases). Only then have courts determined that due process requires a constitutionally adequate bond hearing to justify the prolonged detention. *See Birch*, 2018 WL 794618, at *7; *Lett v. Decker*, 346 F.Supp.3d 379, 387 (S.D.N.Y. 2018). While it is undisputed that Petitioner's detention has extended to an abnormal length, and courts are generally skeptical of prolonged

---

[2] Courts within this district have grappled with the adequacy of the protections provided by the discretionary parole system, which is an issue this Court need not decide. *See Arias v. Aviles*, 2016 WL 3906738, at *10 (S.D.N.Y. July 14, 2016) ("[T]he discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."); *Birch v. Decker*, 2018 WL 794618, at *7 (S.D.N.Y. Feb. 2, 2018) ("[S]ince the parole authority contained in § 1182(d)(5)(A) is entirely discretionary, it provides no actual due process protection for persons facing indefinite detention under § 1225(b).").

detention, the drawn-out trajectory of the immigration proceedings in question is largely a product of Petitioner's litigation strategy. *See Lett*, 346 F.Supp.3d at 387.

As stated, Petitioner was detained on December 5, 2017. Pet. ¶ 21. Following two master calendar hearings, one in December and one in February, Mr. Traore submitted an application for relief from the charge of removability on February 23, 2018. Pet. ¶ 22; Resp. p. 7. In March of 2018, after marrying a United States citizen, Mr. Traore filed an I-130 Petition. Pet. ¶ 24; Resp. p. 7. USCIS denied Mr. Traore's I-130 application on May 29, 2018. Resp. p. 8.

In June of 2018, an immigration judge granted Mr. Traore's application for withholding of removal to Mali. Pet. ¶ 26; Resp. p. 8. As within their rights, ICE appealed that decision to the BIA. Resp. p. 8. Following a remand by the BIA, the immigration judge once again granted Mr. Traore's withholding of removal to Mali on January 29, 2019. Pet. ¶¶ 30-31; Resp. p. 8. Via a written decision issued on March 12, 2019, an immigration judge expressly ordered Mr. Traore's removal from the United States but withheld said removal to Mali. Resp. p. 8. Because Mr. Traore could not be removed to Mali, shortly thereafter the U.S. Attorney's Office identified France as an alternative destination for Mr. Traore's removal. Pet. ¶ 32.

On April 16, 2019, Mr. Traore filed a motion to reopen his removal proceedings, citing DHS's desire to remove him to France as a change in circumstances. Pet. ¶ 35; Resp. p. 9. After granting Mr. Traore's motion, an immigration judge scheduled a merits hearing pertaining to Petitioner's claim for relief from removal to France for July 8, 2019. Pet. ¶ 20; Resp. p. 10. Three days prior to the merits hearing, Mr. Traore filed a motion to terminate the immigration proceedings, thus precluding his removal to France. *Id.*; ECF No. 11. The immigration judge set a briefing schedule and scheduled a hearing to determine the motion to terminate for August 19,

2019. ECF No. 11. The initial July 8, 2019 merits hearing has been delayed as a result.³ *Id.* Further, as alluded to, Mr. Traore has yet to apply for release on parole. *See* Pet. ¶¶ 55-57.

While this Court does not fault or punish Mr. Traore for aggressively litigating his immigration proceedings, the multiple motions requiring briefing schedules and the adjustment of hearing dates naturally prolongs his detention. In addition, there is no indication that Respondents have unnecessarily or maliciously delayed Mr. Traore's proceedings. Unlike *Lett*, where the court determined that there was "significant reason to believe ... detention will continue," and unlike *Bermudez Paiz*, where the court determined that only 22% of the petitioner's time in detention could be attributed to delays caused by the petitioner himself, here, Mr. Traore cannot say the same. *Lett*, 346 F.Supp.3d at 387-88; *Bermudez Paiz*, 2018 WL 6928794, at *13. Mr. Traore married his fiancé, a United States citizen, on March 7, 2018, three months after his initial detention. Pet. ¶ 24; Resp. p. 7. Shortly thereafter, Mr. Traore filed an I-130 petition, which delayed the proceedings. Pet. ¶ 24; Resp. p. 18. Further, after the final order of removal was issued on March 12, 2019, Mr. Traore moved to reopen his removal proceedings in order to allow him to pursue a new application for relief from removal to France. Pet. ¶ 33-35; Resp. pp. 9, 19. An immigration judge granted Mr. Traore's application, and granted his motion to reopen. Pet. ¶ 35; Resp. p. 9. Finally, three days before the merits hearing on Petitioner's application for relief from removal to France, scheduled for July 8, 2019, Mr. Traore filed a motion to terminate the immigration proceedings, thus delaying the process further. ECF No. 11. Mr. Traore has continued to delay the proceedings via requests for conferences as well as the

---

³ Mr. Traore also filed three Petitions for Writs of Habeas Corpus, this being the third, within the duration of his immigration proceedings. Pet. ¶¶ 23, 25, 27, 34; Resp. p. 10.

filing of multiple motions and petitions, none of which have been applications for parole as provided for by 8 U.S.C. § 1182(d)(5)(A).[4]

Thus, this Court cannot say that, on this record, Petitioner's detention has been unreasonable or unconstitutional.

## CONCLUSION

At this point, the due process afforded to Mr. Traore, an arriving alien, does not require a bond hearing to comport with the Constitution. For the aforementioned reasons, Petitioner's Petition for a Writ of Habeas Corpus is hereby **DENIED** in its entirety.

**SO ORDERED.**

**Dated: August 19, 2019**
**New York, New York**

*[signature]*
**HON. ANDREW L. CARTER, JR.**
**United States District Judge**

---

[4] The Court recognizes the brief delay caused by the "legal deficiency" in the immigration judge's original order of removal. Resp. pp. 8-9. However, Respondents and the immigration judge worked quickly to resolve the issue in less than two weeks from the date it was identified. *Id.*